VALLEY NAT. BANK v. PAPIN. See Case No. 12,239.

## Case No. 16,822.

### VALLIERE et al. v. UNITED STATES.

[Hempst. 335.] [1]

District Court, D. Arkansas. June 22, 1847.

#### SPANISH LAND GRANT.

The heirs [Francois Valliere and others] of Don Joseph Valliere, formerly captain in the 6th regiment of the Spanish army serving in Louisiana, claimed title to a large tract of land situated partly in the state of Arkansas and partly in Missouri, on the following facts and documents:

1. The register of the land-office at New Orleans certifies that among the Spanish records under his custody, and forming part of the archives of his office, is a book bearing this title: No. 4, subdivided into volumes or sections, under the title of a "Register de los Primeros Decretos de concession de tierra;" which book exhibits at volume 6, page 31, an entry in Spanish, of which the following is a translation: "11th June, 1793. To Captain Don Joseph Valliere, in the district of Arkansas, a tract of land situated on the White river, extending from the rivers Norte Grande and Cibolos to the source of the said White river, ten leagues in depth."

2. The surveyor-general of Louisiana certifies that amongst the records of the surveyor-general's office under his charge, in bundle N, No. 37, he finds a plat of survey and procès verbal, in the Spanish language, of which the following is a translation: "Don Carlos Trudeau, Royal and Private Surveyor of the Province of Louisiana. I certify having measured in favor and in presence of Don Joseph Valliere, captain of the stationary regiment of Louisiana, a portion of land situated in the jurisdiction of Arkansas, on the north and south banks of Rio Blanco, Rio Cibolos, on the west or superior limit, by the fountainhead or origin of the most western branch of the said Rio Blanco, and by vacant lands of his majesty, separated from said vacant lands by a line beginning at the same fountainhead of the north-western branch of Rio Blanco, running south-west ten leagues in depth, on the north by lands of his majesty, separated from these by a drawn line beginning at the Rio Norte Grande, commencing at a point distant ten leagues in a direct line from its mouth or confluence with the said Rio Blanco, running in a course nearly west until it meets the fountainhead or origin of the most western branch of the Rio Blanco, and on the south side by vacant lands of his majesty, separated from these by a line drawn apart, beginning at a point where ends the south-west limit, ten leagues from the fountainhead or origin of the most western branch of the Rio Blanco, running on a parallel line with the said Rio Blanco, descending ten leagues in depth, until it meets Rio Cibolos, at the distance of ten leagues in a direct line from Rio Blanco. All of which is fully demonstrated in the figurative plan which precedes, in which is marked the dimensions, courses, limits, trees, and posts, serving as artificial or natural boundaries. The line and limits have been made at the request of the grantee, and in compliance with the order from the governor-general, El Baron de Carondelet. 18th June, 1793. I certify to all which precedes, in order that it may be verified. I deliver the present with

the figurative plan 24th October, 1793. (Signed) Don Carlos Trudeau, Surveyor-General."

3. That in the regular record books kept in New Orleans by the Spanish authorities before 1803, but removed by them to Cuba, where the same, as it is said, now are, is recorded a grant of the foregoing land, in the Spanish language, of which the following is a translation: "Don Francisco Baron de Carondelet, &c., &c. For the benefit of the public, and for the greater encouragement of agriculture and industry of the country, I have judged it expedient to take steps for surveying and granting the royal lands in this province. Therefore, I grant to Don Joseph Vallieré, captain of the regiment stationed in Louisiana, a portion of land in the jurisdiction of Arkansas, situated on both banks of the Rio Blanco. ten leagues on both banks, beginning, &c. (describing it as in the above procès verbal, and then proceeds) which will be better seen on the figurative plan made by my order by the surveyor-general, Don Carlos Trudeau, of this province, the 24th October last (it being impossible for the royal surveyor to make an actual survey at the time). And, in virtue of my order of June of the current year, by which I made him a grant, and ordered the surveyor-general to put him in possession according to the usual form, in consequence of the power which has been conferred on me by the king, whom God preserve, I grant in his royal name to the said Don Joseph Vallieré, captain of the regiment of infantry of Louisiana, the said portion described above, in order that he and his legitimate successors may dispose of it as property belonging to him. Done in New Orleans, 22d December, 1793. (Signed) El Baron de Carondelet."

Don Joseph Vallieré died in 1799. Whether he ever took possession of the land, or any part of it, or made any settlement thereon, does not appear; but as it was in the heart of the Indian country, and they hostile, it is probable no settlement of any consequence was made under the grant. No claim of title was presented by his heirs to the commissioners appointed by the act of congress of March 2, 1805 [2 Stat. 324], or the subsequent laws on the subject of French and Spanish grants in the province of Louisiana; nor is the grant mentioned in any of the reports made by any of these commissioners to the treasury department; nor does it appear to have been set up or brought to the notice of any tribunal, or to the notice of the government in any way until now. The first time it appears to have been brought to notice in any form was, that in 1844 a pamphlet was published in New York by "Jared W. Bell, printer, corner of Ann and Nassau streets," containing copies of what purported to be the original title papers and translations, as above set forth, and legal opinions by Daniel Webster, Rufus Choate, A. P. Upshur, David B. Ogden, Thomas Addis Emmett, James Kent, J. Blunt, John Sergeant, and B. F.

Butler, pronouncing the claim valid and the title complete. But the fact that a claim of such magnitude, and thus apparently formal and regular as to muniments of title, should be allowed to sleep more than half a century, is a strong circumstance against its validity, and, on the familiar principle of lapse of time, ought to be almost conclusive against it.

The United States, by S. H. Hempstead, Dist. Atty., answered the petition, denying its allegations, and the validity of the claim, and demanded strict proof thereof. On the 22d of June, 1847, the petition was dismissed for want of prosecution, and a motion to reinstate it, made subsequently, was overruled.

Daniel Ringo and F. W. Trapnall, for petitioners.

S. H. Hempstead, Dist. Atty., for the United States.